**In re: C.M.S., a Minor.**

**Appeal of: D.E.H., Jr., Natural Father.**

Superior Court of Pennsylvania.

Submitted Aug. 22, 2005.
Filed Oct. 6, 2005.

Elizabeth A. Hoffman, Harrisburg, for appellant.

Thomas M. Clark, Dillsburg, Guardian Ad Litem, for appellee.

Mary S. Ramsden, Pittsburgh, for Petitioners.

BEFORE: TODD, MONTEMURO * and BECK, JJ.

OPINION BY BECK, J.:

¶ 1 Father appeals the termination of his parental rights, contending that termination does not best serve the needs and welfare of the child and that petitioners/appellees lacked standing to bring the termination petition. We affirm.

¶ 2 The child C.M.S. was born on June 4, 2001 to a twenty-four year old Mother and a thirty-five year old Father, who never married, nor lived together. During her pregnancy, Mother began arranging for her child's adoption, without Father's knowledge or consent. After the birth, Father visited Mother and child one time in the hospital. Immediately after her release from the hospital, three days after the child was born, Mother executed a consent for adoption and placed the child in the care of Carol Starr. Ms. Starr, who was acting as an intermediary for the adoption, then placed the child with petitioners/appellees T.S. and R.S. Ms. Starr was the wife of Mother's pastor, aunt of R.S., and an employee of the attorney handling the adoption. T.S. and R.S. have cared for the child in their home from the time she was a few days old, up to the present.

¶ 3 On May 22, 2002, T.S. and R.S. petitioned for involuntary termination of Father's parental rights.[1] After a hearing on October 4, 2002, the court denied the petition and refused to terminate Father's parental rights. T.S. and R.S. appealed. A panel of this Court reversed, holding that the trial court abused its discretion in not terminating Father's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1) and (a)(6).[2] In re C.M.S., 832 A.2d 457, 464–66 (Pa.Super.2003). With regard to section 2511(a)(1), the panel determined that the "evidence in the record clearly and convincingly established that Father showed a settled purpose of relinquishing his parental right to Child." Id. at 464. While the panel did not condone the deceitful acts of

---

* Retired Justice assigned to Superior Court.

1. T.S. and R.S. also petitioned for confirmation of Mother's consent for adoption. The court confirmed Mother's consent and her voluntary termination of parental rights on August 23, 2002.

2. The relevant statutory provisions state the following:

The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . .

(6) In the case of a newborn child, the parent knows or has reason to know of the child's birth, does not reside with the child, has not married the child's other parent, has failed for a period of four months immediately preceding the filing of the petition to make reasonable efforts to maintain substantial and continuing contact with the child and has failed during the same four-month period to provide substantial financial support for the child.

23 Pa.C.S.A. § 2511(a).

Mother and Ms. Starr in pursuing the adoption without Father's knowledge, it also found that "the evidence in the record supports the conclusion that Father failed to take action to overcome the obstacles" placed in his way. *Id.* at 463. Father merely voiced his opposition to adoption; he did not exercise "reasonable firmness" in attempting to form a parental bond with his child. *Id.* at 464. With regard to section 2511(a)(6), the panel cited the following evidence. Although Father was well aware of the child's birth, he "did not reside with the child, had not married Mother, and ... had not made reasonable efforts to maintain substantial and continuing contact with Child or provide financial support for Child." *Id.* at 465. For all of these reasons, this Court held that the statutory requirements delineated in sections 2511(a)(1) and (a)(6) for termination of parental rights had been satisfied.

¶ 4 Nonetheless, the panel remanded to the trial court to address the effect of termination of Father's parental rights on the "developmental, physical and emotional needs and welfare of [the] Child," pursuant to section 2511(b).[3] *Id.* at 465–66. The panel noted that no testimony had been taken concerning the effect of termination of Father's parental rights on the child, and remanded for the narrow purpose of addressing this issue. *Id.* Father's application for reargument and petition for allowance of appeal were denied. Before the hearing on remand was scheduled, Father filed a motion in orphan's court to dismiss the petition to terminate his parental rights, based on his contention that petitioners/appellees lacked standing. The court denied his motion on December 23, 2004. On February 8, 2005, the court held a hearing to determine if termination of

Father's parental rights would best serve the child's needs and welfare. Following the hearing, the court issued an Order terminating Father's parental rights.

¶ 5 Father appeals, raising two questions for review. First, Father contends that the trial court abused its discretion in determining that termination of his parental rights best served the needs and welfare of the child. Second, Father contends that the trial court abused its discretion in denying his motion to dismiss the termination petition based on lack of petitioners'/appellees' standing.

■ ¶ 6 We first address Father's contention that the evidence did not clearly and convincingly show that termination of his parental rights best served the needs and welfare of the child. In an appeal from an order terminating parental rights our scope of review is broad and comprehensive, but our standard is narrow. We consider all the evidence, along with the legal and factual findings of the trial court. *In re M.G.*, 855 A.2d 68, 73 (Pa.Super.2004). However, we reverse only if we find an abuse of discretion, an error of law, or insufficient evidentiary support. *In re C.S.*, 761 A.2d 1197, 1199 (Pa.Super.2000) (*en banc*). With respect to evidentiary support, we determine only whether the trial court's findings are supported by competent evidence. *In re S.H.*, 2005 PA Super 260, 879 A.2d 802. We accord the hearing judge's decision the same deference that we would give to a jury verdict. *C.S.*, 761 A.2d at 1199.

■ ¶ 7 An inquiry into whether termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child is a distinct aspect of a termination hearing,

---

3. The relevant portion of 23 Pa.C.S.A. § 2511(b) provides that "[t]he court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child."

to be undertaken only after the statutory requirements of section 2511(a) have been met. *See* 23 Pa.C.S.A. § 2511(b); *In re Adoption of Charles E.D.M., II,* 550 Pa. 595, 602–04, 708 A.2d 88, 92–93 (1998); *In re Involuntary Termination of C.W.S.M.,* 839 A.2d 410, 414 (Pa.Super.2003); *In re Adoption of T.B.B.,* 835 A.2d 387, 397 (Pa.Super.2003); *In re B.L.L.,* 787 A.2d 1007, 1013–14 (Pa.Super.2001). Intangibles such as love, comfort, security, and stability are involved in the inquiry into needs and welfare of the child. *T.B.B.,* 835 A.2d at 397. The court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.*

¶ 8 In the case at bar, Father alleges that the court did not consider the effect that the circumstances of the child's placement are likely to have on her emotional well-being in coming years. Specifically, Father predicts emotional and identity problems for the child when she learns of her Father's ignorance of her placement for adoption. Father presented no evidence in support of his prediction. His own brief testimony was the only evidence offered on his behalf at the February 2005 hearing.

¶ 9 In contrast, appellees offered several lines of evidence concerning the best interests of the child. Aside from their own testimony, appellees offered testimony from two expert witnesses: Dr. Shienvold, a licensed psychologist who performed an evaluation of appellees and the child, and Ms. Parkhill, who conducted a home study. Dr. Shienvold described the attachment that the child has to appellees as "very strong, very secure." N.T., 2/8/05, at 12. He testified that it would be in the best interests of the child to remain with appellees, the people to whom she is primarily

attached, as young children often have problems when they are separated from their primary attachment figures. Ms. Parkhill testified that appellees' home is completely appropriate for raising the child, as it has been set up to be child friendly and to prompt creativity in the child's play.

¶ 10 The court concluded that the child is in a loving, caring, nurturing home where she is being raised by loving and well-adjusted parents. In addition, the court determined that appellees are meeting all of the child's developmental, physical and emotional needs, and that it is in the child's best interests for Father's parental rights to be terminated. The court was faced with a choice between Father's pure speculation about a future potential problem that is within his power to resolve and appellees' well-supported evidence that the child is thriving in a safe and stable environment, where she is strongly attached to appellees as the only parents she has ever known. We find the court's decision to be strongly supported by the evidence and free of legal error.

¶ 11 We turn now to Father's second contention: that appellees lacked standing to bring the termination petition and therefore the petition should have been dismissed for lack of subject matter jurisdiction. As this Court has previously explained, "[w]hen our legislature has designated who may bring an action under a particular statute, a court does not have jurisdiction over the action unless the party bringing the action has standing." *In re Adoption of W.C.K.,* 748 A.2d 223, 228 (Pa.Super.2000), *appeal denied,* 567 Pa. 745, 788 A.2d 378 (2000). In the case at bar, as in *W.C.K.,* the relevant statute is the Adoption Act,[4] which provides for a cause of action to involuntarily terminate

---

4. 23 Pa.C.S.A. §§ 2101–2910.

parental rights and also designates who has standing to file such an action. *See* 23 Pa.C.S.A. §§ 2511 and 2512. Therefore, the trial court did not have jurisdiction over the termination proceedings unless petitioners/appellees had standing to bring the petition to terminate Father's parental rights.

¶ 12 Father first raised the issue of standing in his petition for allowance of appeal, which our Supreme Court denied without comment. However, Father relies on the tenet that "the question of subject matter jurisdiction may be raised at any time, by any party, or by the court *sua sponte*" to argue that this Court may now address the standing issue. *W.C.K.*, 748 A.2d at 228 (quoting *Grom v. Burgoon*, 448 Pa.Super. 616, 672 A.2d 823, 824–25 (1996)). Father neglects to consider that a panel of this Court has previously reached the merits of an appeal concerning the petition to terminate his parental rights. *See C.M.S.*, 832 A.2d at 457. Although neither Father nor the previous panel *sua sponte* raised the issue of standing, the court by reaching the merits of the appeal implicitly determined that it had subject matter jurisdiction and thus that appellees had standing to bring the petition. The previous panel's decision remains the law of the case and we have no authority to override it. However, even if we were to reach the merits of this issue, we would find that petitioners/appellees had standing to file the petition to terminate Father's parental rights.

¶ 13 As discussed above, the Adoption Act specifies who may bring a petition to terminate parental rights: *inter alia*, "[t]he individual having custody [5] or stand-

ing in loco parentis to the child and who has filed a report of intention to adopt." 23 Pa.C.S.A. § 2512(a)(3). There are two aspects to the concept of *in loco parentis*: assumption of parental status and discharge of parental duties. *W.C.K.*, 748 A.2d at 230. In order for assumption of parental duties to be legitimate, it must have been accomplished through "some legally cognizable means." *Id.* Furthermore, the assumption of parental status must be predicated on the natural parent's agreement to a permanent placement of the child. *Id.* In *W.C.K.*, a panel of this Court held that a couple who had been caring for a child for more than a year, with the intent to adopt the child, did not stand in *loco parentis* to the child, because the biological mother had never given her consent to a permanent placement. The panel further held that, since the couple did not stand *in loco parentis* to the child, they did not have standing to bring a petition for termination of mother's parental rights, and therefore the trial court did not have subject matter jurisdiction. Based on the lack of jurisdiction, the panel reversed the trial court's order terminating the mother's parental rights. *Id.* at 226. Thus, intent of the biological parent to place the child for adoption is absolutely essential in determining whether third parties can be characterized as prospective adoptive parents who stand *in loco parentis* to the child. *Id.* at 231.

¶ 14 In several other cases, where consent *was* clearly manifest for adoption, this court has held that prospective adoptive parents did stand *in loco parentis* to a child and thus had standing to commence a

---

**5.** Custody in this context is defined as legal custody. *In re: J.F.*, 392 Pa.Super. 39, 572 A.2d 223, 225 (1990); *In re: Crystal D.R.*, 331 Pa.Super. 501, 480 A.2d 1146, 1148 (1984). For example, foster parents, who neither have legal custody, nor stand *in loco parentis*, can-

not petition to terminate the parental rights of their foster child's biological parents. *Crystal D.R.*, 480 A.2d at 1151–52. In the present case, appellees did not have legal custody of the child and hence must rely on standing *in loco parentis* to satisfy the statute.

legal proceeding involving the child, either for custody or termination of parental rights. *Silfies v. Webster*, 713 A.2d 639, 643–45 (Pa.Super.1998); *Mollander v. Chiodo*, 450 Pa.Super. 247, 675 A.2d 753, 755–57 (1996); *In re Baby Boy S.*, 420 Pa.Super. 37, 615 A.2d 1355, 1357–58 (1992); *In re Adoption of J.M.E.*, 416 Pa.Super. 110, 610 A.2d 995, 999 (1992), *appeal denied*, 533 Pa. 612, 618 A.2d 402 (1992). Revocation of the biological parent's consent or lack of a formal grant of custody was not sufficient to eliminate standing of prospective adoptive parents. *Silfies*, 713 A.2d at 644; *Mollander*, 675 A.2d at 756–57; *Baby Boy S.*, 615 A.2d at 1357–58; *J.M.E.*, 610 A.2d at 996, 999.

¶ 15 The issue presented in the case at bar is whether prospective adoptive parents stand *in loco parentis* to the child when one biological parent gives consent for adoption and the other biological parent does not consent, but also fails to take any action to bond with or support the child or to assert his parental rights for the first year of the child's life. Given the facts of the present case, we find that appellees were prospective adoptive parents who stood *in loco parentis* to the child. There is no question that Mother consented in writing to the adoption of her child by appellees and voluntarily terminated her parental rights. There is no question that appellees have assumed and discharged parental duties with regard to the child since she was several days old. There is also no question that Father was aware of these facts.

¶ 16 Father knew that Mother had placed the child for adoption, he continued to have a relationship with Mother, and he voiced his opposition to the adoption—but voice his opposition to the adoption is all that he did with regard to the child for more than a year. As this Court has previously stated, Father did not make reasonable efforts to maintain contact with, to bond to, or to provide financial support for his child. *C.M.S.*, 832 A.2d at 462–65. Father never filed a petition for custody or visitation. He claims that there was nothing he could do, but this Court has previously rejected Father's protestations of lack of recourse. *Id.* Father *did* have legal recourse and his failure to pursue it for over a year after the child's birth has contributed to the length of this dispute. Father failed to take action, while appellees assumed and discharged all parental duties with regard to the child. The child is now four years old, living in the only home and with the only parents that she has ever known. To deny that appellees stood *in loco parentis* to the child would require us to ignore not only the reality of this child's life, but also Father's failure to establish any sort of bond with his newborn child or to provide in any way for her care. This we cannot and will not do.

¶ 17 In spite of these considerations, Father insists that his case is controlled by our Supreme Court's holding in *B.A. v. E.E. ex rel. C.E.*, 559 Pa. 545, 741 A.2d 1227 (1999). The Court in *B.A.* addressed whether prospective adoptive parents can achieve *in loco parentis* status in defiance of a biological parent's wishes. In *B.A.* the teenage mother gave custody of her one day old child to an adoption agency, which immediately placed the child with prospective adoptive parents. *Id.* at 548, 741 A.2d at 1228. The teenage father however refused to consent to the adoption and instead, less than two months after the birth, filed a complaint for primary physical custody of the child. *Id.* When the prospective adoptive parents filed a motion to intervene, the trial court granted the motion, based on its finding that they stood *in loco parentis* to the child. After a custody hearing, the trial court awarded primary physical custody to the prospec-

tive adoptive parents. The biological father appealed, and this Court affirmed.

■ ¶ 18 Our Supreme Court granted allowance of appeal to determine whether the lower courts erred in conferring *in loco parentis* status upon the prospective adoptive parents, thereby allowing them to intervene. *Id.* The Court held that allowing intervention was error and vacated the order granting custody to the prospective adoptive parents. The underlying rationale behind the Court's holding was that parents enjoy a presumption of the right to custody of their children. *Id.* at 549 n. 1, 741 A.2d at 1229 n. 1. Third parties do not have standing to interfere with the natural parents' custody of their child— "unless the natural parents' prima facie right to custody is successfully overcome via ... dependency proceedings." *Id.* at 549, 741 A.2d at 1229 (quoting *Cardamone v. Elshoff,* 442 Pa.Super. 263, 659 A.2d 575, 581 (1995)). That is, third parties must show in a dependency proceeding that the child is not properly cared for before they can intervene in a custody proceeding involving the natural parent. *Id.*

¶ 19 We disagree with Father that *B.A.* must control his case, because the factual circumstances and the procedural posture are dissimilar. In *B.A.* the appellant-father filed a petition for custody within two months of his child's birth. In the case at bar, Father *never* filed a petition for custody, or even visitation, and took no legal action for more than a year after his child's birth. Father merely stated to various people that he was opposed to the adoption, while taking no steps to establish any relationship with, nor to support his child. Father's inactivity presents a very different fact pattern from that of *B.A.*

¶ 20 Father's inactivity and lack of involvement with his child more closely resemble a subsequent case decided by this Court. *See McDonel v. Sohn,* 762 A.2d ·1101 (Pa.Super.2000), *appeal denied,* 566 Pa. 665, 782 A.2d 547 (2001). In *McDonel,* this Court affirmed the standing of an aunt and uncle of a three year old child to sue the father for custody. The child's mother, who was deceased, had granted *in loco parentis* powers to the aunt and uncle. *Id.* at 1105. The aunt and uncle regularly and frequently cared for the child in their home, assuming the role of parent for long periods of time while the mother battled a number of serious psychological problems. *Id.* at 1103, 1106. In contrast, the father initially denied paternity and had very little contact with the child for the first three and one half years of her life. *Id.* Nonetheless, when the aunt and uncle brought suit against the father for custody (as the mother was dying), father contended that they lacked standing to do so because they did not have *in loco parentis* status. In refuting the father's argument and granting *in loco parentis* standing to the aunt and uncle, this Court contrasted the father's extended lack of involvement in his child's life with the immediate legal action of the father in *B.A.* to seek custody of his newborn. We find the same distinction in the case at bar. Father waited for a year before taking any steps to play a role in his child's life and now he wants simply to erase the fact that someone else fulfilled the parental role in his absence. We rejected that notion in *McDonel* and we reject it here.[6]

¶ 21 Finally, we note that, unlike *B.A.* and *McDonel,* the case at bar is a termination proceeding, not a custody proceed-

---

**6.** Father also argues that appellees lack standing because their report of intention to adopt, required by 23 Pa.C.S.A. § 2512(a)(3), was filed late. Appellees acknowledge that the report was required and was filed late. We decline to find that this error implicates standing.

ing. The burden of proof was on petitioners/appellees, as the party seeking termination, to show by clear and convincing evidence that the statutory requirements for termination of parental rights were satisfied. *In re N.W.*, 859 A.2d 501, 506 (Pa.Super.2004) (citing *T.B.B.*, 835 A.2d at 394). Determining that petitioners/appellees had standing in no way alters the standard or the placement of the burden of proof—it simply allows them to come before the court to make their case. Appellees met their burden of proof, as found by this Court two years ago. *See C.M.S.*, 832 A.2d at 457. The trial court then found, and we now affirm, that termination best serves the needs and welfare of the child. It is well past time for this litigation to be over and the placement of this four year old child to be finalized.

¶ 22 Order affirmed.