J-S32015-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

IN RE: ADOPTION OF: H.J.A.M AND : IN THE SUPERIOR COURT OF
M.F.M. : PENNSYLVANIA
:
:
:
:
:
:
:
APPEAL OF: M.M., NATURAL FATHER : No. 103 WDA 2014

Appeal from the Order entered December 16, 2013,
Court of Common Pleas of Warren County,
Orphans' Court at No.: AN No. 7 of 2013

BEFORE: PANELLA, DONOHUE and ALLEN, JJ.

MEMORANDUM BY PANELLA, J. **FILED AUGUST 28, 2014**

M.M. ("Father"), appeals the order entered on December 16, 2013, which granted the petition filed by the Warren County Children and Youth Services ("CYS") to involuntarily terminate Father's parental rights to his minor female child, H.J.A.M. (born in June of 2005), and to his minor female child, M.F.M. (born in September of 2006), (collectively "the Children"), pursuant to section 2511 of the Adoption Act, 23 Pa.C.S.A. § 2511(a) and (b).[1]

The orphans' court has comprehensively set forth the facts and procedural history of this case in its opinion and we have attached a copy of that decision to this memorandum. **See** Memorandum Opinion and Findings of Fact, 12/16/13, at 1-17.

---

[1] B.L.M.'s ("Mother") parental rights to H.J.A.M. and M.F.M. were also terminated on December 16, 2013. Mother has not appealed from the order.

In his brief, Father raises the following issues:

I. Did the Trial Court abuse its discretion in concluding Dr. Peter VonKorff, the Children and Youth Services expert, saw termination and adoption in this particular case as a "net gain" for the children where Dr. VonKorff did not use that term and, in fact, did not offer an opinion on the ultimate issue of termination?

II. Did the Trial Court abuse its discretion in failing to consider the language of 23 Pa.S.C.A. 2511(b) which provides, "[t]he rights of a parent shall not be terminated solely on the basis of environmental facts such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent"[?]

III. Did the Trial Court abuse its discretion in failing to address Children and Youth Services['s] [strong preference toward] Mother in providing services to promote reunification?

Father's Brief, at 8.

In his first issue, Father asserts that the orphans' court abused its discretion by finding that Dr. Peter Von Korff, CYS's expert in psychology, stated that termination of parental rights and adoption would result in a "net gain" for Children, because, according to Father, Dr. Von Korff never provided such testimony. Father's Brief at 14-17.

Dr. Von Korff testified, in relevant part, as follows: "[I]f, hypothetically, [Children] were to be given permanency within an environment where they do feel security, in relation to their care givers [*sic*] that would certainly be a *net plus*." N.T., 9/16/13, at 77 (amended 3/17/14)

(emphasis added).[2]  The record further reflects that Children are in a home where they can be given permanency and appear to feel secure in relation to their foster parents.  Children's foster mother, J.H., testified that she and her husband are an adoptive resource for Children.  *See* N.T., 10/30/13, at 99.  Children refer to their foster parents as "mom" and "dad"; give their foster parents hugs and kisses and say that they love them; have a relationship with the foster parents' extended family; behave more age-appropriately and get along better with each other since coming to the foster home.  *See id*., at 29-30, 42-43, 98.  Therefore, the orphans' court did not abuse its discretion by determining that it would be a "net gain" for Children if their parents' rights were terminated.

Next, Father states that the orphans' court abused its discretion by failing to address the factors contained in section 2511(b)[3] of the Adoption

---

[2]  This portion of the transcript was corrected on March 17, 2014 pursuant to Rule of Appellate Procedure 1926(b).  *See* Orphans' Court Order, 3/17/14; *see also* Pa.R.A.P. 1926(b).  The transcript previously stated, in relevant part, "… in relation *so* their care givers that would certainly be *in that* plus." Orphans' Court Order, 3/17/14 (quoting N.T., 9/16/13, at 77) (emphasis supplied).

[3]  Section 2511(b) provides:

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed

Act and, in violation of that section, by terminating his parental rights to Children solely on the basis of environmental factors beyond his control. **See** Father's Brief at 17-19.

Father is correct that the orphans' court initially failed in its Memorandum Opinion and Findings of Facts to address section 2511(b). However, this panel remanded this case to the orphans' court to address the issues raised on appeal, **see** 103 WDA 2014 (Pa. Super., filed 7/24/14) (judgment order), and the orphans' court has complied with our directive. The orphans' court, in its well-written opinion, has specifically addressed section 2511(b).

Under section 2511(b), the court must inquire whether termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child. **See In Re C.M.S.**, 884 A.2d 1284, 1286-87 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." **Id**., at 1287 (citation omitted). The orphans' court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on

---

> pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

the child of permanently severing that bond. ***Id***. "Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." ***In re T.S.M.***, 71 A.3d 251, 268 (Pa. 2013) (citation omitted).

Beginning with his claim that his rights were terminated based only on environmental factors beyond his control, (*i.e.,* his lack of housing and employment) the orphans' court opinion belies this contention. The orphans' court stated that in addition to Father's lack of employment and appropriate housing, it considered the following: Father's drug dealing; his incarceration; his going months without having any contact with Children; his prior refusal to take drug screens, which delayed any attempt CYS could make to reunify him with Children; his failure to advance beyond supervised visits to have unsupervised time with Children; his initial denial of paternity; his sporadic participation in drug and alcohol treatment; his refusal to take advantage of budgeting assistance; and his failure to attend Children's medical appointments or meetings regarding their education. ***See*** Opinion Pursuant to Pa.R.A.P. 1925(a), 8/11/14, at 9-11. According to the orphans' court, all of these factors, taken together, resulted in the conclusion that Father has not made significant steps towards remedying the circumstances that led to the initial placement.

The orphans' court further found that Children have a "minimum parental bond" with Father. Opinion Pursuant to Pa.R.A.P. 1925(a),

8/11/14, at 9. The orphans' court noted that "[t]he Children are clearly in a healthy placement in their foster home, and have a positive relationship with their foster parents, siblings, and grandparents" and that "terminating the bond" between Father and Children "would best serve" their "interests." *Id*. The record amply supports the orphans' court's findings.

Lastly, Father challenges the orphans' court's failure to address CYS's provision of more services to Mother than to Father to promote reunification with Children. *See* Father's Brief at 19-20. Although Father is correct that Mother received attachment therapy with Children and that CYS provided Mother with financial assistance to help her secure an apartment, the record does not support Father's assertion that CYS made these efforts in an attempt to reunify Children with Mother over Father. With respect to the financial assistance, the CYS caseworker testified that Father was aware that financial assistance for an apartment was also available to him once he found an apartment and had employment, but Father never followed through. *See* N.T., 9/17/13, at 364; N.T., 10/30/13, at 67. As for the attachment therapy with Children, the CYS caseworker testified that Mother's bonding assessment with Children recommended that she undergo attachment therapy with Children, and that her bonding assessment occurred several months before Father participated in his bonding assessment, which recommended that he also participate in attachment therapy with Children. *See* N.T., 10/30/13, at 70. The CYS caseworker

testified that the attachment therapy provider indicated that if parents were not going to be together, Children could only participate in such therapy with one parent at a time. ***See id.*** As Children were already enrolled in attachment therapy with Mother, CYS did not initiate the therapy for Children with Father. Thus, Father's claim that CYS disproportionately provided reunification services to Mother over Father is without merit.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/28/2014