J. S23002/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.J.G., JR., | : | IN THE SUPERIOR COURT OF |
| A MINOR | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.T., MOTHER, | : | |
| | : | No. 2869 EDA 2013 |
| Appellant | : | |

Appeal from the Order Dated October 10, 2013,
in the Court of Common Pleas of Philadelphia County
Family Court Division at Nos. CP-51-AP-0000284-2013,
CP-51-DP-0000752-2011

BEFORE: FORD ELLIOTT, P.J.E., LAZARUS AND WECHT, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:    **FILED MARCH 10, 2015**

This matter returns to us following our earlier memorandum decision directing the trial court to file a supplemental opinion to address and evaluate the existence of the emotional bond between Mother and Child, and to address the effect on Child if Mother's parental rights were terminated. The earlier decision also allowed for the taking of additional testimony if the trial court believed such testimony was necessary.

It is not necessary to go into a lengthy discourse regarding the factual and procedural history of this case. Suffice it to say, we have already determined that the record supports a conclusion that the requirements for termination under Section 2511(a)(1) have been met. *See In the Interest of: M.J.G., Jr.*, No. 2869 EDA 2013 unpublished memorandum at 18

(Pa.Super. filed April 28, 2014).  We turn our attention to Section 2511(b) which provides, in relevant part, as follows:

> **§ 2511.  Grounds for involuntary termination**
>
> . . . .
>
> **(b)  Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

In reviewing the evidence in support of termination under Section 2511(b), we consider whether the termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child.  *See In re C.M.S.*, 884 A.2d 1284, 1286-1287 (Pa.Super. 2005), *appeal denied*, 897 A.2d 1183 (Pa. 2006).  "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child."  *Id.* at 1287 (citation omitted).  The court must also discern the nature and status of the parent-child bond, with

utmost attention to the effect on the child from permanently severing that bond. *Id.*

We are mindful of the bonds that form between the parent and the child and the consequences of breaking those bonds. However, it is not enough that a child knows his parent, enjoys being with him, and loves him; being a parent means assuming responsibility so that a real bond develops, not just having a casual relationship with one's child. *In Re J.L.C.*, 837 A.2d 1247, 1249 (Pa.Super. 2003). Children often know, love, and sometimes have an enjoyable time with parents who have little to do with their upbringing. *Id.* Such is the case here.

Instantly, the remand hearing took place on November 26, 2014.[1] The trial court issued a supplemental opinion on January 23, 2015, and determined that DHS met its statutory burden pursuant to Section 2511(b). At the hearing, the trial court heard testimony from the DHS social worker, Mr. OK Hubbard, who was assigned to the case in March or April of 2012. (Notes of testimony, 11/26/14 at 58.) Hubbard saw Child every month and worked on the case up to the termination hearing on October 10, 2013. (*Id.* at 58-59.) Throughout his involvement in this case, Hubbard met with

---

[1] We express our concern that this Children's Fast Track case was remanded on April 28, 2014, for a period of 30 days in order that the trial court could address the mother/child bonding issue. Following several inquiries from the judge's chambers and a clarification order filed on August 20, 2014, as to what was required of the court, the hearing was finally held seven months later.

Mother and saw Child at his foster home. (***Id.*** at 59.) It was Hubbard's opinion that Child looked to his foster mother as a parental figure. (***Id.*** at 64.) While acknowledging that Child liked his visits with Mother, Hubbard was asked if he believed Child would suffer permanent emotional harm if Mother's parental rights were terminated, and he answered, "No." (***Id.*** at 64, 80.) Kioyna Brown, an agency worker with the Friendship House, testified she supervised all the visits that Mother had with Child. (***Id.*** at 39.) When asked whether Mother and Child shared a bond, she responded, "The bond, it was more like somebody you see on a regular basis, not really like a motherly bond." (***Id.*** at 40.)

Child's foster mother also testified. She was asked if Child demonstrated a sadness because he was unable to live with Mother, and she answered, "No." (***Id.*** at 115-116.) The trial court opined:

> [T]he child has a primary parental bond with the foster parents who provide him with the developmental, physical and emotional well-being. The foster parents specifically provide this bond in the form of care, support, day to day love and education.

Trial court opinion, 1/23/15 at 3.

The record is clear that Mother could not successfully raise or parent Child due to her ongoing substance abuse issues as well as her inability to maintain adequate and stable housing. This court has held that a child's life, happiness, and vitality cannot be put on hold until a parent finds it convenient to perform parental duties. ***In the Matter of the Adoption of***

***A.M.B.***, 812 A.2d 659, 675 (Pa.Super. 2002). Clearly, the effect of terminating Mother's parental rights would be to ensure Child a permanent, stable, and loving environment. Thus, the trial court found credible the conclusion of DHS that terminating Mother's parental rights would not have a detrimental effect on Child, and the goal of adoption would be in Child's best interest.

Accordingly, we find the record and law support the order of the trial court terminating Mother's parental rights and changing Child's permanency goal to adoption.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/10/2015