J-S03029-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: K.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.M., NATURAL MOTHER | |
| | No. 1414 WDA 2016 |

Appeal from the Order Dated August 25, 2016
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-AP-087-2016

| | |
|---|---|
| IN RE: D.M-R., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.M., NATURAL MOTHER | |
| | No. 1415 WDA 2016 |

Appeal from the Order Dated August 25, 2016
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-AP-088-2016

BEFORE:  OLSON, J., SOLANO, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SOLANO, J.:                    **FILED MARCH 10, 2017**

Appellant M.M. ("Mother") appeals from the order granting the petition of the Office of Children, Youth, and Families ("OCYF") to involuntarily terminate her parental rights to K.M., born in January of 2005, and D.M-R.,

_____

[*] Retired Senior Judge assigned to the Superior Court.

born in November of 2010 ("Children"). Mother concedes sufficient grounds exist to support termination under 23 Pa.C.S. § 2511(a), but contends that there was insufficient evidence to justify termination under Section 2511(b). We affirm.

We state the facts as presented by the family court:

> Hannah Shankle (hereinafter, "Ms. Shankle"), a family service caseworker for OCYF, testified that the family was active with OCYF since 2003 with Mother's two older children. On January 17, 2005, after K.M.'s birth, OCYF obtained a restraining order because Mother threatened to leave the hospital with K.M. On January 19, 2005, a shelter hearing was held and K.M. was placed into care. On July 29, 2005, K.M. was adjudicated dependent. K.M. was returned to her Mother at the adjudication hearing. The case remained open for an additional ten months while Mother worked on services. The case closed on May 18, 2006 with K.M. remaining with Mother.
>
> On October 9, 2007, K.M. was removed a second time when Mother contacted OCYF and informed them that she felt overwhelmed and was unable to parent K.M. On November 14, 2007, K.M. was adjudicated dependent a second time and remained in care until December 17, 2010 when she was returned to Mother. Mother was to complete a mental health evaluation, complete drug and alcohol treatment, and submit to random screens. On May 19, 2011, the case was closed and K.M. remained in Mother's care.
>
> On January 2, 2012, the Children [(D.M-R. was born in November of 2010)] were removed via an [Emergency Custody Authorization] after OCYF received a referral that the Children were left for the New Year's holiday with an inappropriate caregiver and an inadequate amount of food. This was K.M.'s third removal and D.M.R.'s first removal. On January 6, 2012, the Children were returned to Mother's care and remained with Mother until case closure on March 1, 2012.

On January 26, 2015, OCYF received a referral that Mother left the Children [in Pittsburgh] with [N.G.], the paramour of D.M.R.'s biological father, and moved to Durham, North Carolina. [N.G.] filed a Private Dependency Petition. [N.G.]'s application to proceed with her dependency petition was granted on April 8, 2016. The Children were placed in [N.G.]'s care. This was K.M.'s fourth removal and D.M.R.'s second removal. Mother did not cooperate with OCYF's investigation and had limited contact with OCYF. On June 24, 2015, the Children were again adjudicated dependent. They were to remain with [N.G.]. The Children have not returned to the care of their Mother since she left them in Pittsburgh in January of 2015. [On cross-examination, Mother testified that the reason she did not return to Pittsburgh was that N.G. said she would bring the children back to North Carolina.]

At the June 24, 2015, adjudication, Mother was court ordered "to obtain independent housing from her paramour. She was ordered to complete a drug and alcohol assessment and comply with all recommendations and complete parenting classes and domestic violence classes."

Ms. Shankle testified that OCYF "was concerned that the housing that [Mother] was residing in was unstable, that she did not have her own independent housing. [OCYF] requested a lease showing that she had stable housing. To date, [OCYF] has not received any documentation of that independent housing." Ms. Shankle testified "that there was domestic violence that coincided with her domestic violence goal"[1] which is why her housing needed to be independent of that of her paramour. Mother admitted to having domestic violence in past relationships and with her current paramour. . . . Mother provided OCYF with a certificate of completion for an online domestic violence

_____

[1] Because Mother previously admitted to being the victim of domestic violence in her past and current relationships, one of her goals was completing a domestic violence treatment program, the details of which were not in the record.

course. Mother has not provided a release of information for OCYF to verify the veracity of the course.[2]

Due to Mother's extensive drug and alcohol history, Mother was court ordered to have a drug and alcohol assessment and comply with recommendations. Ms. Shankle provided Mother with releases of information[3] on April 20, 2016, May 27, 2016, and July 6, 2016 to verify treatment. Mother only signed one release for B and D Behavioral Health Services, a dual diagnosis program. The B and D Behavioral Health Services documents indicated that Mother admitted to a relapse of alcohol and marijuana in February of 2016. Additionally, Mother's intake evaluation at B and D Behavioral Health Services raised concerns to OCYF because she "disclosed that she was having homicidal and suicidal ideations, that she was extremely angry at times. She would have periods of isolation where she would not leave her home for days at a time."

Mother was ordered to attend parenting classes because OCYF "had significant concerns with [Mother's] lack of supervision for the children. She had a history of leaving them with inappropriate caregivers. Additionally, she did leave the Children [in Pittsburgh] and had very limited contact and visits with them." Mother completed an online parenting class [in August of 2015] and provided OCYF with a certificate of completion. Mother has not provided a release of information for OCYF to verify the veracity of the program. [As of August 2015, Mother had not yet visited or called the Children.]

Mother was to have one supervised visit per month in Allegheny County. OCYF was ordered to assist with transportation. Since the adjudication of dependency on

---

[2] We presume the court was referring to submission of proof that Mother completed the program.

[3] Apparently, this refers to documentation that had to be completed by Mother to authorize the program to release information to OCYF.

June 24, 2015, Mother completed one visit with the Children on March 12, 2016.

Family Ct. Op., 10/24/16, at 2-5.

At the August 12, 2016 hearing on whether to terminate Mother's parental rights, the OCYF caseworker testified that at the beginning of the March 12, 2016 visit, Mother was discussing the case status and was not focused on the Children. D.M-R. brought a book to Mother, who set the book aside and ignored D.M-R. for the duration of the visit. Mother's focus was on K.M. The caseworker prompted Mother to pay attention to both children. Outside of the visit, according to the caseworker, Mother called the Children just twice: once in November of 2015, and once in June of 2016. Mother has not sent any cards, gifts, presents, or letters to the Children. The caseworker noted that Mother was in Pittsburgh for a scheduled psychological evaluation on July 14, 2016, but did not want to visit the Children.

The caseworker testified that the bond between the Children and N.G. was "great." She said she observed the interactions between the Children and N.G., and opined that N.G. has addressed all of the Children's emotional needs and was also involved in K.M.'s education.

Dr. Neil Rosenbaum also testified at the hearing. He said he did not have the opportunity to evaluate Mother.[4] Nevertheless, he opined that Mother's minimal efforts at remaining in contact with the Children, when considered in conjunction with the Children's close meaningful attachment to N.G., established the absence of any bond between Mother and the Children.

Under the Code, a court may make a finding of "aggravated circumstances" if a "child is in the custody of a county agency and . . . the identity or whereabouts of the parents is known and the parents have failed to maintain substantial and continuing contact with the child for a period of six months." 23 Pa.C.S. § 6302. On March 16, 2016, the family court found that aggravated circumstances existed and relieved OCYF of the obligation to engage in reasonable efforts to reunify Mother with the Children. The court held that Mother failed to maintain substantial and continuing contact with the Children. After seeing the Children in January of 2015, Mother did not see them again until March 12, 2016, a timespan of over a year. She never inquired about their well-being, although the court found that she did call the Children four to five times over a period of six months.[5]

---

[4] The parties disputed whether Mother could have rescheduled her evaluation with Dr. Rosenbaum.

[5] The finding of four or five calls is inconsistent with the caseworker's testimony at the August 12, 2016 hearing that Mother called only twice. The court apparently chose to accept the contrary testimony provided at the

*(Footnote Continued Next Page)*

On August 25, 2016, the family court terminated Mother's parental rights. Mother timely appealed.

To terminate parental rights, the family court must conclude that the petitioner established grounds under 23 Pa.C.S. § 2511(a) and (b). Here, the family court terminated Mother's parental rights under 23 Pa.C.S. § 2511(a)(2) and (a)(5),[6] as well as 2511(b). On appeal, Mother concedes grounds exist to terminate under subsection (a)(2), and we therefore do not address the family court's subsection (a) holding.

_(Footnote Continued)_ —————————

March 16, 2016 hearing at which the trial court found aggravating circumstances. The March 16, 2016 transcript is not part of the record.

[6] These provisions allow termination if:

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
>         *      *      *
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(2), (5).

Mother contends, however, that the record was insufficient to justify termination under Section 2511(b). Mother's Brief at 13. She acknowledges her limited contact with the Children, but maintains the court improperly focused on the strength of the bond between the Children and N.G. and improperly assumed there was no relationship between the Children and Mother. We disagree.

We consider Mother's issue in light of our established standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511(b) provides:

> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and

- 8 -

> medical care if found to be beyond the control of the parent. . . .

23 Pa.C.S. § 2511(b).

This Court has stated that the focus in terminating parental rights under Section 2511(a) is on the parent, but that under Section 2511(b) it is on the child. *See In re C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). The Court explained that, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted), *appeal denied*, 897 A.2d 1183 (Pa. 2006). Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (citation omitted). "In addition to a bond examination, the court can equally emphasize the safety needs of the child under subsection (b), particularly in cases involving physical or sexual abuse, severe child neglect or abandonment, or children with special needs." *Id.* at 763.

In *K.Z.S.*, the mother, among other things, was separated from the child in question for almost four years, had missed 33 out of 53 scheduled

visits, and, at one point, had no contact with the family agency for fourteen months. *K.Z.S.*, 946 A.2d at 755. The family court opined that the bond between the mother and the child could be severed without detrimental effects, given their attenuated relationship and the child's close bond with his foster mother. *Id.* at 764.

Similarly, here, at the time of the trial court's decision, Mother had not seen the Children for over a year, and only visited them once—days before the court found Mother failed to "maintain substantial and continuing contact with the Children." Family Ct. Op. at 5. Even assuming that Mother called the Children four to five times over a six-month timespan, the record still contains meager evidence of any significant bond between Mother and the Children. She has not tried to send cards, gifts, presents, or letters to the Children and never called N.G. to inquire about the Children's well-being. She has not seen the Children, has made no efforts to see them, and actually declined to see them the last time she was in Pittsburgh. When she last saw the Children in March 2016, she had to be prompted to pay attention to both of them. We agree with the family court that the record supports its conclusion that "there was no indication that an emotional bond exists to the extent that the termination of parental rights of Mother" would be adverse to the Children. *See K.Z.S.*, 946 A.2d at 763-64. Additionally, the Children are thriving with N.G., who has afforded them permanency and

fulfilled their developmental, physical, and emotional needs. *See* 23 Pa.C.S. § 2511(b).

Accordingly, we hold the family court did not abuse its discretion by holding that the involuntary termination of Mother's parental rights best served the needs and welfare of the Children under Section 2511(b).

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/10/2017