J-S26045-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF T.J.M., a minor | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:  M.M., MOTHER | : | No.  2702 EDA 2015 |

Appeal from the Order Entered August 6, 2015
in the Court of Common Pleas of Philadelphia County
Family Court, at No(s): AP# CP-51-AP-000523-2012,
DP# CP-51-DP-0093116-2009, and FID# 51-FN-470133-2009

| | | |
|---|---|---|
| IN THE INTEREST OF R.A.M., a minor | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:  M.M., MOTHER | : | No.  2703 EDA 2015 |

Appeal from the Order Entered August 6, 2015
in the Court of Common Pleas of Philadelphia County
Family Court, at No(s): AP# CP-51-AP-000522-2012,
DP# CP-51-DP-0093115-2009, and FID# 51-FN-470133-2009

BEFORE:    OLSON, STABILE, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:   **FILED MAY 17, 2016**

M.M. (Mother) appeals from the orders entered August 6, 2015, which terminated involuntarily her parental rights to her minor children, T.J.M., born in February 2008, and R.A.M., born in February 2007 (collectively, Children).[1,2]  We affirm.

As aptly summarized by the trial court:

---

[1] This Court *sua sponte* consolidated Mother's appeals by order dated October 7, 2015.

[2] The assignment of this appeal to this panel was delayed due to the failure of the trial court to transmit the certified record to this Court in a timely fashion.  Such delays are unacceptable.  We remind the trial court that time is of the essence in cases involving the status of children.

*Retired Senior Judge assigned to the Superior Court.

        This case initially became known to the Department of
Human Services ("DHS") on September 3, 2009, when DHS
received a General Protective Services ("GPS") report alleging
that [Children] were at risk of abuse by [J.M. (Father)[3]. []
Children and Father lived with their paternal grandmother. The
paternal grandmother had initially called the police to have
Father removed from her home. During the course of the DHS
investigation, it was reported that Father had an active addiction
to drugs and alcohol and often became physically abusive to the
paternal grandmother and her paramour. This report was
investigated by DHS and was substantiated.

        [Because Mother had left the home prior to DHS becoming
involved with Children,[4] Mother was not present when they
executed the Order of Protective Custody ("OPC") or the shelter
hearing on September 30, 2009. On October 7, 2010, the [trial
court] adjudicated [] Children dependent and committed them to
DHS. At the time of adjudication, Mother's whereabouts were
unknown, and a Parent Locator Search ("PLS") was ordered for
Mother.

Trial Court Opinion (TCO), 11/20/2015, at 1 (citations omitted).

        Once removed from the home, Children remained in DHS care, and

since August 2010, they have been in a kinship foster home of their paternal

---

[3] The same day that the trial court terminated Mother's parental rights to Children, the court entered an order terminating the parental rights of Father. This appeal does not address the order terminating Father's parental rights to Children, which the court docket indicates Father did not appeal.

[4] Mother testified that she left because Father became "extremely abusive [and] physically violent with [Mother]. [Father's] alcoholism and his drug use just became too much for [Mother] to handle." N.T., 8/6/2015, at 255. At the time she left Children with Father, Mother was pregnant with her third child. She gave birth to a son, Children's biological brother, in September 2009. Mother testified she gave the child up for adoption. *Id.* at 256. Mother also had children with her ex-husband; those children remained with their father when Mother left him. N.T., 8/6/2015, at 261-62.

cousin and her husband (Foster Parents), who wish to adopt Children. N.T., 8/6/2015 at 45, 115.

On October 10, 2014, the Child Advocate filed the instant Petition for Involuntary Termination of Parental Rights. The hearing on the Petition for Involuntary Termination of Parental Rights was held on August 6, 2015….

[T]he [trial court] found that the Child Advocate had met its burden and presented clear and convincing evidence to support termination of Mother's parental rights under 23 Pa.C.S. §§ 2511(a)(1), and (2) of the Adoption Act. Pursuant to 23 Pa.C.S. §§ 2511(b), the [trial court] found that while a bond exists between Mother and [] Children, it is not a parent-child bond. There was a bond evaluation done for Mother, and there was testimony that the termination of Mother's parental rights would not create detrimental harm to [] Children, as they have no significant bond.

The [trial court] found that based on the evidence, it was in the best interests of [] Children to be adopted and granted the termination of Mother's parental rights on August 6, 2015 based on [§§] 2511(a)(1), and (2) and 2511(b).

TCO, 11/20/2015, at 2, 9 (citations omitted).

Mother timely filed notice of appeal. Both Mother and the trial court complied with Pa.R.A.P. 1925. On appeal, Mother raises two issues for our consideration:

Whether the [t]rial [c]ourt erred by terminating the parental rights of Appellant, Mother, under 23 Pa.C.S. §§ 2511 subsections (a)(1) and (a)(2)?

Whether the [t]rial [c]ourt erred by finding, under 23 Pa.C.S. §§ 2511(b), that termination of [Mother's] parental rights best serves [] Children's developmental, physical[,] and emotional needs and welfare?

Mother's Brief at 5.

- 3 -

We consider Mother's claims mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

- 4 -

In this case, the trial court terminated Mother's parental rights pursuant to subsections 2511(a)(2) and (b),[5] which provide as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> \*\*\*
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> \*\*\*
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. …

23 Pa.C.S. § 2511.

First, Mother argues that the trial court erred in terminating her parental rights under subsection (a)(2) where testimony was presented that Mother was compliant[6] with her family service plan objectives.[7] Mother's

---

[5] The trial court also concluded that DHS satisfied the requirements of subsection 2511(a)(1). However, for the purpose of our review, we need only agree with the trial court as to any one subsection of 2511(a), as well as subsection 2511(b), in order to affirm. ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Accordingly, we limit our discussion to subsection 2511(a)(2) and (b).

[6] The DHS social worker testified that Mother was "fully compliant" with the objectives given to her, while the Agency worker found that Mother's compliance was "substantial." N.T., 8/6/2015, at 50, 127.

Brief at 12-13. Furthermore, Mother contends that Dr. William Russell, an Assessment and Treatment Alternatives (ATA) forensic psychologist who provided a parenting capacity evaluation on Mother, observed that Mother appears to "be clean of drugs and alcohol since 2010" and "compliant with mental health and medication." *Id.* at 12. While acknowledging that Dr. Russell nonetheless concluded that Mother could not provide safety and permanency for Children, Mother points to the testimony of DHS social worker Britton Stewart and family development specialist Kevin Boone regarding her compliance with set goals and treatment. Mother avers that she does not have "any incapacity that would prevent her from parenting her Children." *Id.* at 13. Further, Mother states that she has "endured years of treatment and believes she is ready for her Children to be returned to her." *Id.*

In its 1925(b) opinion, the trial court concluded:

> Mother's ATA [Assessment and Treatment Alternatives] evaluation and the testimony of Dr. Russell showed that Mother did not have the capacity to "provide ongoing structure and safety for [] children." Dr. Russell stated that he was concerned that in the six years this case has had DHS involvement, Mother had not made "any significant effort to develop the independence that would allow her to provide as a caregiver."
>
>> [S]ome of the issues that went on during that addiction and during the period before her sobriety are still evident today. One of the biggest problems and one of the things we really look for in a parent is

---

[7] These objectives included obtaining housing, completing parenting classes, drug, alcohol and mental health treatment, and visiting Children regularly. Mother's Brief at 11-12.

- 6 -

> their ability to anticipate, their ability to think forward because it's crucial in providing safety. If you can't anticipate potential problems, potential dangers, potential stressors for your child you aren't going to be able to provide the safety that child needs and you put your child at risk.

There was no other expert testimony presented to dispute Mother's parental capacity. Therefore, based on the evidence, Dr. Russell's testimony was uncontested and found to be credible by this Court.

Mother's lack of capacity to provide [] Children with ongoing safety and structure, has been an issue for more than six months prior to filing the petition for termination. The ATA evaluation stated that Mother has had at least twenty years of this behavior. In fact, Mother has had:

> [an] extensive history of substance abuse dating back over twenty years. And has a history of dysfunctional relationships. She has a history of having children within these dysfunctional relationships. And then in one case she had two older children where she left the relationship and left [] children with the father. And in a subsequent relationship where there were two other children she left the relationship and left [] children with the father and continued her addiction. Somewhere around 2009, 2010 [Mother] began to decide that she didn't want to be an addict anymore and began to seek treatment … However again … the history for [Mother] during the addiction period is clearly one where there was no anticipating, where there was merely just drug addiction and move as you want to move.

> … Mother has shown a passive interest in the development of [] Children. There has been no evidence presented that Mother would have been able to provide the love, protection and guidance that [] Children need to develop properly. In this case, Mother has not exerted herself to see the needs of [] Children, instead, she has "Been waiting for the court dates." [The trial court's] position is

that Mother has more than a duty to come to court; she had a duty to place herself in a position of importance in [] Children's life. During the hearing, Mother did not present that testimony. Mother presented evidence that her only means of supporting [] Children were by relying on her husband's sixty-nine year old grandmother and waiting an additional two years until she finishes school to be able to provide for her own children. When asked directly whose responsibility was it to provide for [] Children, Mother['s] respon[se] was "It would be mine and my husband[']s.

TCO, 11/20/2015, at 11-12, 14-15 (citations omitted).

This Court has held that:

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted).

After a thorough review of the record in this matter, we conclude that the trial court did not err in concluding that DHS satisfied its burden under subsection 2511(a)(2). The trial court found Dr. Russell's testimony credible and determined that Mother did not have the capacity to provide for Children. We find no abuse of discretion in the trial court's findings as they are supported by the record. *See In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) ("The grounds for termination due to parental incapacity that

cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." (citations omitted)).

Mother also contends that the trial court erred in finding that the termination of Mother's parental rights was in the best interest of Children pursuant to subsection 2511(b). We have discussed our analysis under subsection 2511(b) as follows.

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In **In re C.M.S.**, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. **Id**. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. **In re K.Z.S.**, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. **Id**. at 763.

**In re Adoption of J.M.**, , 324 (Pa. Super. 2010).

The trial court concluded that terminating Mother's parental rights would best serve the needs and welfare of Children. In so doing, the court reasoned:

> In the instant case the [trial court] was satisfied that grounds for termination under § 2511(b) of the Adoption Act were established by clear and convincing evidence.
>
> At the termination hearing, the [trial court] heard the uncontested testimony of Dr. Williams. Dr. Williams completed a

bond evaluation on Mother and [] Children and found the severance of their relationship would not lead to irreparable harm. Dr. Williams concluded that "there is a very limited relationship and there's very limited engagement on [C]hildren's side of things." Dr. Williams also concluded that there was very limited interest and affection of [] Children for the Mother. In addition, Dr. Williams stated that [] Children would have anxiety and "physical symptoms of nauseousness" before visiting with Mother and also had a difficult time recovering from their visits as well. Dr. Williams also concluded that there would be no irreparable harm because "this case was one of notable indifference."

However, Dr. Williams only found that there would be irreparable harm if permanent contact between the siblings were severed.

One of the core sources for the strength of a parental bond are the visits between Mother and [] Children. The main purpose for offering parents visitation with their children is to "preserve the unity of the family whenever possible or to provide another alternative permanent family when the family cannot be maintained." In this case, [] Children were taken into DHS care when they were one and two years old respectively. Mother has not maintained contact with [] Children in a way that would place her in a parental role of [C]hildren. During the bonding evaluation, where Mother knew she was being watched for the purpose of analyzing the bond between her and [] Children, Mother did not actively engage with [] Children.

TCO, 11/20/2015, at 13-14 (citations removed).

Mother argues termination was improper pursuant to subsection 2511(b), because a bond existed between her and Children. Mother's Brief at 15. In support, Mother cites testimony of conversations she has had with Children and the testimony of Mr. Stewart, the social worker who testified there was a bond between Mother and Children. Mother further claims that "any lack of bond that [] Children have with Mother is due to missed visits

by the agency."[8]  *Id.* at 16.  Mother also noted that she had not seen Children for a month prior to the bonding assessment.  *Id.* at 15-16. Moreover, Mother contends that Children have told her during visits that they want to come home and live with her and that "with consistent visitation, [] Children will be ready to reunify with her."  *Id.* at 16.

After a thorough review of the record in this matter, we conclude that the trial court properly terminated Mother's parental rights to Children under subsection 2511(b).  Mother's argument about the Children's bond with her is unpersuasive in light of the trial court's factual findings.  The trial court specifically rejected Mr. Stewart's opinion about any such bond, as he had viewed the interactions between Children and Mother during only one visit. TCO, 11/20/2015, at 8.  The court did, however, credit the testimony of Dr. Williams, the director of forensic services at ATA and a licensed psychologist, who conducted a bond evaluation.[9]  Although she noted there was a relationship between the Mother and Children, it was a "very limited relationship and there's very limited engagement on [C]hildren's side of

---

[8] Mother argues that the only reason the agency worker testified that she was substantially compliant with her objectives and not fully compliant were the missed visits.  Mother's Brief at 15.

[9] Dr. Williams testified that "a bonding evaluation has the goal to look at the level and strength of attachment of a child or children with the identified caregiver in the evaluation" and the purpose of such an evaluation is to "take that observation and combine it with available information regarding the parent and [C]hildren in the case and come to an understanding of whether or not if the contact with that particular caregiver were to be severed permanently[,] would there be irreparable harm done to the child or children."  N.T., 8/6/2015, at 175-76.

things. And limited interest and affection for that relationship."[10] *Id.* at 180. *See In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) ("The mere existence of an emotional bond does not preclude the termination of parental rights."). As this Court explained,

> [C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super 2008).

Dr. Williams did not believe Children would be irreparably harmed if Mother's parental rights were terminated. N.T., 8/6/2015, at 181-82.

Mother's attempt to place blame on the agency for missed visits, which Mother attests would be the only reason for any "lack of bond," is misplaced and not supported by the record. Although there was testimony that some visits were cancelled by the agency or Foster Parents, Mr. Boone testified that, excluding cancellations due to inclement weather, in the ten months prior to the filing of the petitions, Mother missed seven of the twenty-one visits offered. N.T., 8/6/2015 at 105.

Based on the above, we conclude that the record supports the trial court's determination that Children's needs and welfare are best served by

---

[10] Mr. Boone testified that Children have a parent-child bond with their Foster Parents and "want to stay where they are." Mr. Boone also stated that he did not believe Children were bonded to Mother. N.T., 8/6/2015, at 112-15.

terminating Mother's parental rights. Accordingly, we affirm the orders of the trial court.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 5/17/2016