J-S39045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.W., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1799 EDA 2025 |

Appeal from the Order Entered June 17, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000831-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: A.J.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.W., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1800 EDA 2025 |

Appeal from the Decree Entered June 17, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000284-2024

BEFORE: STABILE, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED DECEMBER 23, 2025**

J.W. ("Father") appeals from the decree that involuntarily terminated

his parental rights to his son, A.W. a/k/a A.J.W. ("Child"), born in August of

2013.[1]  Father also appeals from order that changed Child's permanency goal from reunification to adoption.  We affirm the involuntary termination decree and dismiss the appeal from the goal change order as moot.

These appeals arise from the petitions filed by the Department of Human Services ("DHS") for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b) and for Child's permanency goal change from reunification to adoption.[2]  An evidentiary hearing on the petitions occurred on June 17, 2025, during which DHS presented the testimony of Sinamon Bethea ("Ms. Bethea"), the case manager from the Community Umbrella Agency ("CUA") assigned to Father's case.  DHS also introduced Father's criminal docket into evidence, *inter alia*, which the court admitted.  Father testified on his own behalf.[3]

In its Rule 1925(a) opinion, the trial court summarized Ms. Bethea's testimony as follows.

> Ms. Bethea testified the case became known to DHS based on a [General Protective Services] report in September of 2022, alleging sexual abuse by Father [against] [Child's three] sisters. On September 22, 2022, DHS obtained an [order of protective

---

[1] The court issued a decree voluntarily terminating the parental rights of Child's mother, S.T. ("Mother"), on October 29, 2024.  Mother has not participated in this appeal.

[2] DHS filed the goal change petition on August 1, 2024, and the involuntary termination petition on November 1, 2024.

[3] Child was represented by separate legal and best interests counsel at the involuntary termination proceeding.

custody] for [Child] and his siblings. . . . At the shelter care hearing held on September 28, 2022, the [order of protective custody] was lifted, and the temporary commitment to DHS was ordered to stand.[4] [Child] was placed with a family friend [in foster care] on April 29, 2023, and he remains there to this day.

On November 24, 2024, . . . Father pled guilty to the charges of rape of a child and unlawful contact with a minor related to the allegations involving [Child]'s sisters. Father was sentenced to 15 [to] 30 years [of] state incarceration followed by 3 years of probation. Father was classified as a Tier 3 Sex Offender and must follow the lifetime registration requirements with ["]Megan's Law.["] There was a further sentencing condition that Father was to have no contact with or reside with minors or biological children without written approval from the [c]ourt [("the stay away order")].

Ms. Bethea testified that single case plan objectives were created for Father and mailed out to him. . . . Father's single case plan objectives are to complete all recommended programs while incarcerated; complete and follow recommendations of a psychosexual assessment; comply with all court orders; [and] comply with [the] stay away order . . ..

Ms. Bethea testified Father did not complete any of the recommended programs while he was incarcerated. Ms. Bethea testified that the first and only time she spoke to Father was on January 30, 2025. Ms. Bethea testified they spoke about his objectives, and Father informed her that at the last prison where he was incarcerated, he could not complete any programs. Father further told Ms. Bethea that at the prison he is at now, he cannot start any programs until he completed his minimum sentence. Ms. Bethea testified this information about Father [not being able to start programs] was never communicated to her despite Father having her contact information. . . . Father never attempted to reach out to Ms. Bethea.

Ms. Bethea also testified Father had not obeyed the stay away order. . . . Ms. Bethea testified Father had spoken on the phone to one of [Child's] sisters . . . when she was at her paternal grandmother's home. . . .

_____

[4] Child was adjudicated dependent on March 16, 2023.

Trial Court Opinion, 8/26/25, at 11-12 (citations to record omitted).

By decree dated and entered on June 17, 2025, the trial court involuntarily terminated Father's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). In addition, by order entered on the same date, the court changed Child's permanency goal to adoption.

Father timely filed notices of appeal, which this Court consolidated *sua sponte*. Father concurrently filed concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed a responsive Rule 1925(a) opinion, noting that due to Father's sentence, he would be in custody when Child reached the age of majority, which "eliminate[d] the possibility of Father caring for [C]hild." **See** Trial Court Opinion, 8/26/25, at 13. The trial court also determined that no parent-child bond existed between Father and Child and found credible Ms. Bethea's testimony that a parent-child bond existed between Child and his foster mother. **See id**. at 15.

On appeal, Father asserts that the trial court erred by terminating his parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and by changing Child's permanency goal from reunification to adoption. **See** Father's Brief at 5-6.

We first consider Father's issues with respect to the involuntary termination decree. Our Supreme Court has reiterated that "appellate review

is limited to a determination of whether the decree . . . is supported by competent evidence." ***In re Adoption of C.M.***, 255 A.3d 343, 358 (Pa. 2021) (citations omitted). The Court explained that this review requires appellate courts

> to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but it does not require the appellate court to accept the lower court's inferences or conclusions of law. That is, if the factual findings are supported, we must determine whether the trial court made an error of law or abused its discretion. An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. . . . We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*Id*. at 358-59 (citations and quotation marks omitted).

The involuntary termination of parental rights is governed by section 2511 of the Adoption Act, which requires a bifurcated analysis. ***See*** 23 Pa.C.S.A. § 2511. The trial court must initially determine whether the conduct of the parent warrants termination under section 2511(a). Only if the court determines that the petitioner established grounds for termination under section 2511(a) does it then engage in assessing the petition under section 2511(b), which involves a child's needs and welfare. ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). To involuntarily terminate parental rights, the petitioner must prove grounds under both section 2511(a) and (b) by clear and convincing evidence, which is evidence that is so "clear, direct, weighty, and

convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." **C.M.**, 255 A.3d at 358 (citation omitted).

It is axiomatic that we need only agree with any one subsection of section 2511(a), along with section 2511(b), to affirm the termination of parental rights. **See In re Adoption of K.M.G.**, 219 A.3d 662, 672 (Pa. Super. 2019) (*en banc*). In this case, we conclude that the evidence supports termination pursuant to section 2511(a)(2) and (b), which provides as follows.[5]

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * * *
>
> **(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. . . .

---

[5] Because we analyze the decree pursuant to section 2511(a)(2), we need not consider Father's arguments with respect to section 2511(a)(1), (5), and (8).

23 Pa.C.S.A. § 2511(a)(2), (b).

The grounds for termination of parental rights under section 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct; those grounds may also include acts of refusal and incapacity to perform parental duties. **See In re S.C.**, 247 A.3d 1097, 1104 (Pa. Super. 2021). Section 2511(a)(2) "emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being," especially "where disruption of the family has already occurred and there is no reasonable prospect for reuniting it." **In re Z.P.**, 994 A.2d 1108, 1117 (Pa. Super. 2010) (citation and emphasis omitted).

We have long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. **See In re Adoption of M.A.B.**, 166 A.3d 434, 443 (Pa. Super. 2017). At a termination hearing, the trial court may properly reject as untimely or disingenuous a parent's vow to follow through on necessary services when the parent failed to co-operate with the agency or take advantage of available services during the dependency proceedings. **See S.C.**, 247 A.3d at 1105.

In **In re Adoption of S.P.**, 47 A.3d 817 (Pa. 2012), our Supreme Court addressed the relevance of incarceration in termination decisions under section 2511(a)(2). The Court held that

incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

*Id*. at 828.

With respect to section 2511(b), this Court has stated that the trial court "must . . . discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). Specifically, this Court has explained that trial courts must

assess whether the bond is "necessary and beneficial" to the child, such that "maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." [*In re K.T.*, 296 A.3d 1085, 1109 (Pa. 2023).] If a bond exists, the court must ascertain the effect upon the child of severing the bond. [*See i*]*d.* Because the severing of any parent-child bond may be emotionally painful for a child, the orphans' court cannot preclude termination based solely on evidence of an "adverse" or "detrimental" impact to the child. *Id*. at 1110-11. Instead, focusing upon the "child's development, and mental and emotional health," the [trial] court should assess whether severing the bond "is the kind of loss that would predictably cause extreme emotional consequences or significant, irreparable harm" to the child. *Id*.

*In re Adoption of G.W.*, 342 A.3d 68, 90 (Pa. Super. 2025). In addition to the bond examination, it is well-settled that "the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." *In re A.S.*, 11 A.3d 473, 483 (Pa. Super. 2010).

Turning to Father's argument with respect to section 2511(a)(2), he baldly asserts that the evidence was insufficient to terminate his parental rights. *See* Father's Brief at 15. Specifically, Father contends that he "can[n]ot complete his objectives because of prison rules . . .." *Id*. at 16. We note that Father's argument is devoid of any precedential case law relating to the effect of incarceration on the termination of parental rights. Additionally, for the reasons that follow, we conclude that Father's argument is meritless.

Father was sentenced to a term of incarceration of fifteen to thirty years after pleading guilty to crimes involving the rape of Child's three minor sisters. *See* N.T., 6/17/25, at 20. Father was also sentenced to three years of probation upon his eventual release from incarceration, and he is bound by a sentencing condition prohibiting him from having any contact or residing "with minors or biological children without written approval from the court." *Id*. at 20, 24. Father began serving his sentence on September 24, 2024. *See* Trial Court Opinion, 8/26/25, at 13. Based upon these facts, the court concluded that Child, who was then eleven years old, would reach the age of majority well before Father completed his minimum sentence. *See id*. The court found that these circumstances "eliminate[d] the possibility of Father caring for" Child. *Id*.

We discern no abuse of discretion by the trial court in concluding that (1) Father's repeated and continued incapacity due to his incarceration has caused Child to be without essential parental care, control or subsistence

necessary for his physical or mental well-being and (2) the causes of Father's incapacity cannot or will not be remedied where Child will be approximately twenty-six years old when Father reaches his minimum sentence of incarceration. **See S.P.**, 47 A.3d at 828. Thus, Father's argument with respect to section 2511(a)(2) fails.

Father also asserts that the evidence was insufficient to terminate his parental rights pursuant to section 2511(b). **See** Father's Brief at 18. Specifically, he claims that "he wanted to visit" Child. **Id**. Further, Father argues that, although Ms. Bethea testified that Child told her that he desires adoption and did not want to visit Father, "there was no testimony from [C]hild directly" about his wishes. **Id**.[6]

In this case, the record overwhelmingly supports the termination of Father's parental rights pursuant to section 2511(b). Initially, there is no evidence that a parental bond exists between Father and Child. **See In re K.Z.S.**, 946 A.2d 753, 762-63 (Pa. Super. 2008) (stating that, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists.) Ms. Bethea testified that Child "does not" ask about

---

[6] To the extent Father argues that Ms. Bethea's testimony in this regard was inadmissible hearsay, he has waived this claim for failing to lodge any objection during the subject proceeding. **See In re N.B.**, 260 A.3d 236, 243 (Pa. Super. 2021) (reiterating, "In order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court") (citation omitted); **see also** Pa.R.A.P. 302(a).

Father, and she agreed on cross-examination that, in the underlying matter, Child consistently expressed that he did not desire any contact with Father. N.T., 6/17/25, at 37-38.

In contrast, Ms. Bethea testified that Child shares a parental bond with his foster mother, who is a pre-adoptive resource. *See id*. at 33-37. Moreover, Ms. Bethea testified that Child "would be impacted a lot" if he was removed from his foster mother. *Id*. at 33. Ms. Bethea explained that this is due, in part, to child's "connection with" his foster mother. *Id*. Ms. Bethea confirmed on cross-examination by Child's counsel that, since being placed with his foster mother, Child has been able to "emotionally and physically stabilize." *Id*. at 36-37. In addition, she testified that Child is in sixth grade at an intermediate school, where he is "doing better." *Id*. at 35.

Based upon the foregoing, we discern no abuse of discretion by the court in concluding that Child's developmental, physical, and emotional needs and welfare necessitate the termination of Father's parental rights pursuant to section 2511(b). Accordingly, we affirm the decree.

Finally, Father appeals from the order changing Child's permanency goal to adoption. Given our disposition of Father's appeal from the involuntary termination decree, however, we conclude that his appeal from the goal change order is moot. *See Interest of A.R.*, 311 A.3d 1105, 1114 (Pa. Super. 2023) (holding that the affirmance of termination of parental rights

renders an appeal of the goal change to adoption moot). Thus, we dismiss the appeal from the goal change order as moot.

In sum, we affirm the decree with respect to the involuntary termination of Father's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b). We dismiss the appeal from the goal change order as moot.

Decree affirmed. Appeal from goal change order dismissed as moot.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>12/23/2025</u>