J-A29038-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.A.B.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.A.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 824 WDA 2025 |

Appeal from the Decree Entered May 29, 2025
In the Court of Common Pleas of Erie County
Orphans' Court at No. 26 in Adoption, 2025

BEFORE:  OLSON, J., DUBOW, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED: January 21, 2026**

C.A.C. (Mother) appeals from the decree which granted the petition of the Erie County Office of Children and Youth (the Agency) and terminated her parental rights to S.A.B.C. (Child).[1]  After careful review, we affirm.

The orphans' court has thoroughly detailed the case history.  **See** Orphans' Court Opinion (OCO), 8/1/25, at 1–6.  Notably, Child was born in January 2015, and came into the emergency care of the Agency in February 2024.  Mother was homeless at the time and her whereabouts were unknown.  N.T., 5/16/25, at 84.  For more than a year, Mother had left Child in the care of Mother's adult daughter/Child's half-sister (D.C.).  The Agency learned

---

[1] No father is identified on Child's birth certificate, and Child's putative father is deceased.  **See** Petition for Involuntary Termination of Parental Rights, 3/20/25, at 1.

about the situation after receiving a referral that Child was not enrolled in school. *Id.* at 83.

Child was adjudicated dependent on February 20, 2024. The Agency had located Mother, and the court ordered that Mother, among other things, obtain stable housing; participate in a mental health assessment and follow recommendations; participate in an Agency-approved parenting program and follow recommendations; and demonstrate an ability to provide for Child's needs through employment or other resources. *See* OCO at 2. The court held review hearings on May 6, 2024, August 19, 2024, November 13, 2024, and February 24, 2025. After each hearing, the court determined that Mother had not complied with any of the court's directives.

On March 20, 2025, the Agency petitioned to terminate Mother's parental rights. The orphans' court held hearings on May 16, 2025 and May 23, 2025. Child's guardian ad litem represented Child's best interest, and legal counsel expressed Child's preferred outcome.[2] The Agency presented testimony from their caseworker, Katelyn Szewczyk; a clinical psychologist who evaluated Mother, Dr. Peter von Korff; two Justice Works employees who supervised visits between Mother and Child, Annette May and Emily Kightlinger; and child's therapist, Lauren DiBacco. Mother testified in opposition to termination.

---

[2] The guardian ad litem advocated for termination as being in Child's best interests. N.T. at 6. Legal counsel relayed Child's desire to live with Mother. *Id.* at 7.

- 2 -

On May 29, 2025, the orphans' court entered the decree terminating Mother's parental rights. Mother timely filed a notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). Mother presents the following claims:

1. Whether the [orphans'] court erred in concluding that the [Agency] established, by clear and convincing evidence, statutory grounds for termination of Mother's parental rights under 23 Pa.C.S. § 2511(a), where the evidence relied primarily on past stipulations and did not demonstrate current incapacity or unwillingness to parent?

2. Whether the [orphans'] court erred in failing to give primary consideration to the developmental, physical, and emotional needs and welfare of [C]hild, as required under 23 Pa.C.S. § 2511(b), where [C]hild expressly wished to return to Mother and the court failed to address the bond or the harm that severance would cause?

Mother's Brief at 3.

Our appellate review is limited to whether the termination decree is supported by the evidence. *In re Adoption of C.M.*, 255 A.3d 343, 358 (Pa. 2021). This Court must accept the orphans' court's findings of fact and credibility determinations if they are supported by the record. *Interest of S.K.L.R.*, 256 A.3d 1108, 1123 (Pa. 2021). Where the factual findings are supported by the evidence, an appellate court may not disturb the ruling unless it has discerned an error of law or abuse of discretion. *In re Adoption of L.A.K.*, 265 A.3d 580, 591 (Pa. 2021). This Court may reverse for an abuse of discretion "only upon demonstration of manifest unreasonableness,

partiality, prejudice, bias, or ill-will." *Id.* (citations omitted). Our Supreme Court has explained:

> Because [orphans'] courts are on the front lines assessing the credibility of witnesses and weighing competing and often challenging evidence, it is paramount that, in reviewing [the] courts' decisions in this arena, appellate courts defer to [the] courts' first-hand observations as they relate to factual determinations. In this regard, we reiterate that appellate courts must review such decisions for an abuse of discretion or error of law, and appellate courts may reverse [orphans'] courts only when that discretion has been breached or when the law has been misapplied. In other words, an appellate court should review the certified record to decide whether it supports the [orphans'] court's order, regardless of whether the appellate court agrees with the result that the [orphans'] court reached.

*Interest of S.K.L.R.*, 256 A.3d at 1129.

Under the Adoption Act, 23 Pa.C.S. §§ 2101–2938, the orphans' court must consider a parent's conduct and the grounds for termination enumerated in Section 2511(a). If the court finds clear and convincing grounds for termination under Section 2511(a), it must then assess the child's needs and welfare under Section 2511(b), "giving primary consideration to the developmental, physical and emotional needs and welfare of the child." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). This Court "need only agree with [the orphans' court's] decision as to any one subsection of [Section 2511(a), in addition to Section 2511(b),] to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Here, the orphans' court terminated Mother's parental rights pursuant to Sections 2511(a)(1), (2), (5), (8) and (b), which state:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. …

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child. …

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child. …

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. …

23 Pa.C.S. § 2511.

In her first claim, Mother argues that the orphans' erred in finding grounds for termination because the evidence, "severely undermines any conclusion that Mother remains unable or unwilling to remedy the conditions leading to placement under the necessary [Section] 2511(a) analysis."[3] Mother's Brief at 5. Mother contends the court "committed error in this matter by not taking into account [Mother's] efforts to reunify" with Child. **Id.** Mother's claim lacks merit.

The Agency caseworker, Ms. Szewczyk, testified to being the "on-going caseworker" from the inception of the case, when the Agency learned that Child was living with D.C. and not enrolled in school. N.T. at 82-83. Ms. Szewczyk noted that Mother "had a history with [the A]gency, at least going back to 2012, for concerns including untreated mental health, behavioral health concerns, [child] abandonment and inadequate housing." **Id.** at 87. With regard to Child, Ms. Szewczyk recounted the Agency's unsuccessful efforts to engage Mother with court-ordered services, and testified that Mother had not "remedied any of the reasons why [C]hild was adjudicated [dependent]." **Id.** at 106.

The expert psychologist, Dr. von Korff, testified that Mother had mental health issues which would require years of treatment. He stated that "individuals who have personality disorders of the type we're talking about — are challenging to treat." **Id.** at 23. Dr. von Korff said that he "would be very

---

[3] Mother does not address the orphans' court's findings specific to subsections 2511(a)(1), (2), (5), and (8).

concerned to see [Child] in [Mother's] care." *Id.* Consequently, he opined that Mother was "not in a position to" care for Child. *Id.* at 27. Dr. von Korff's testimony, as well as the testimony of Ms. Szewczyk and the Agency's other witnesses, support the orphans' court's findings of grounds for termination under Section 2511(a)(1), (2), (5) and (8).

The orphans' court observed that "Mother was not in a caregiving role for the Child since at least January, 2023," and "Mother's refusal and failure to perform parental duties spans at least the statutorily required six months, if not three to four years." OCO at 35. The court explained:

> Mother [knew] Child was in the custody of [D.C.], who had no legal standing for custody of Child. Despite this, Mother's efforts to get the Child returned to her care were nearly nonexistent. Further, appropriate care of Child deteriorated while in [D.C.]'s custody, as Child had not been enrolled in school and was significantly behind in medical and dental care. The responsibility for these issues lay with Mother, who then attended few to none of Child's medical appointments during the dependency case, and reacted with a troubling dismissiveness to the Child's diagnosis of a heart murmur.
>
> ***
>
> [The Agency] has shown by clear and convincing evidence that Mother's mental health issues and unsafe and inadequate housing would work a significant detriment to the Child's development if reunification were to occur. Unfortunately, Mother has demonstrated no ability to care for [C]hild on a full-time basis.

*Id.* at 35, 38.

Upon review, we cannot conclude that the orphans' court erred or abused its discretion in finding grounds for terminating Mother's parental rights.

In her second claim, Mother argues that the orphans' court erred in finding that termination served Child's best interest. Mother cites the statement of Child's legal counsel, who relayed that Child wants to live with Mother, as showing "compelling evidence of a parent-child bond." Mother's Brief at 6 (citing N.T. at 7). Mother asserts that the orphans' court "relied almost exclusively on the expert opinion [from Dr. von Korff,] about Mother's deficiencies," and "[n]ot enough mind was given to the inherent bond that existed between [M]other and [C]hild." *Id.* This claim is also meritless.

Section 2511(b) requires that the orphans' court give primary consideration to a child's needs and welfare. 23 Pa.C.S. § 2511(b). Intangibles "such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). The orphans' court must consider the parent-child bond and effect on the child of permanently severing the bond. *Id.* However, our Supreme Court has explained:

> The Section 2511(b) inquiry must also include consideration of other important factors such as: the child's need for permanency and length of time in foster care consistent with 42 Pa.C.S. § 6351(f)(9) and [the federal Adoption and Safe Families Act], 42 U.S.C. §§ 675(5)(C), (E); whether the child is in a pre-adoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability. These factors and others properly guide the court's analysis of the child's welfare and all her developmental, physical, and emotional needs. *See T.S.M.*, 71 A.3d at 268–69 ("[T]he law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best

- 8 -

interests and the needs and welfare of the particular children involved.").

*Int. of K.T.*, 296 A.3d 1085, 1113 (Pa. 2023). Orphans' courts "have the discretion to place appropriate weight on each factor present in the record before making a decision regarding termination that best serves the child's specific needs." *Id.*

In this case, the orphans' court based its needs and welfare determination on the testimony of Child's therapist, Ms. DiBacco, and the testimony of Ms. Szewczyk. *See* OCO at 37. For example, Ms. DiBacco testified that Child was residing in a pre-adoptive foster home, and Child had relayed that "it felt good to be somewhere where she knew she was safe and … made her happy." N.T., 5/23/25, at 13. Ms. DiBacco noted that Child had progressed socially and academically after her visits with Mother were suspended. *Id.* at 15. She opined that if visits with Mother resumed, "that would really derail the progress [Child] is making and throw her back into a state of instability and chaos, and we would see a regression in any progress she is making." *Id.* Ms. DiBacco added that with Child's foster family, she saw Child "having a really great future, and the family is good at connecting with her and helping her problem-solve and work through things, so I [envision Child] becoming more confident, developing healthier relationships, thriving at school, [and] thriving in social interactions." *Id.* at 15-16.

Similarly, Ms. Szewczyk stated that Child was "doing amazing" in her pre-adoptive placement. N.T., 5/16/25, at 107. Ms. Szewczyk testified that

termination was in Child's best interest.  When asked to explain her position, she stated:

> [Child] has [exhibited] so much growth [in her foster placement]. She is attending school on a regular basis.  She is having her medical needs met that were not met when she was with [M]other.  She is able to be a kid. … And she is in safe and stable housing….

*Id.* at 113.  Although Ms. Szewczyk recognized a "type of bond" between Child and Mother, she stated that "therapy would help" Child with any negative effect from severing the bond.  *Id.* at 114-15.

The orphans' court referred to the testimony of Ms. DiBacco and Ms. Szewczyk in concluding that its needs and welfare "decision for termination is clear."  OCO at 37.  The court explained:

> The [c]ourt heard testimony from Child's therapist, Ms. DiBacco, and [Agency] caseworker Ms. Szewczyk, that Child has notably progressed since being placed in foster care.  Child has started school and is working diligently to catch up to her peers, and her medical needs are being consistently met.  Child has secure and stable housing, which significantly contrasts from the inconsistent nature of Mother's and [D.C.]'s living situations.  Further, Child is socializing with her peers and, according to Ms. DiBacco, has promise of real growth and fulfilling relationships at this time. Therefore, the [c]ourt finds that involuntary termination of Mother's parental rights to Child is in Child's best interest.

*Id.*

The record supports the orphans' court reasoning.  Thus, the court did not err or abuse its discretion in finding that termination served Child's needs and welfare.

Decree affirmed.

- 10 -

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/21/2026